UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ULTRAFABRICS, LLC,

                                    Plaintiff,

- against -

DEITSCH PLASTIC COMPANY, INC.,

                                    Defendant.
------------------------------------------------------------------X

Civil Action, Docket No.:

**COMPLAINT**

**JUDGE KARAS**

**TRIAL BY JURY DEMANDED**

**'10 CIV 06247**

Plaintiff, ULTRAFABRICS, LLC ("Ultrafabrics"), by its attorney, STEVEN A. CAMPANARO, ESQ., alleges upon information and belief the following as its Complaint against Defendant DEITSCH PLASTIC COMPANY, INC. ("Deitsch").

## NATURE OF ACTION

1. This is an action seeking money damages for breach of contract, breach of warranty, negligence, and fraud under the laws of the State of New York. Deitsch manufactured and sold to Ultrafabrics man-made leather trim material which Ultrafabrics in turn resold to one of its customers in the recreational vehicle market. The trim material manufactured and shipped by Deitsch in the years 2007, 2008, and 2009 were defective in that they prematurely cracked and delaminated. As a result, Ultrafabrics was required to replace the defective trim material it resold to its customer during this time period with a more expensive material resulting in it to suffer a monetary loss. Ultrafabrics suffered additional losses as a result of Deitsch's actions including the lost value of the goods it had purchased but could not resell, lost profits and damage to Ultrafabrics business reputation.

## JURISDICTION AND VENUE

2. The within action is brought under the court's diversity jurisdiction as set forth in 28

U.S.C. §1332.

3. Diversity of citizenship exists between Plaintiff, a New York Corporation with its principal place of business located in the City of Tarrytown, State of New York, and the Defendant, a foreign corporation with its principal place of business located in the City of West Haven, State of Connecticut.

4. The Court has personal jurisdiction over Deitsch pursuant to Section 302(a)(1) of the New York Civil Practice Law and Rules as it transacts business within the State of New York.

5. The Court has personal jurisdiction over Deitsch pursuant to Section 302(a)(1) of the New York Civil Practice Law and Rules as it contracted with Ultrafabrics to supply goods in the State of New York

6. The Court has personal jurisdiction over Deitsch pursuant to Section 302(a)(1) of the New York Civil Practice Law and Rules since it supplied defective goods outside the state causing injury within the state of New York, and:

    a) Regularly does business within the State of New York; or

    b) Expects the act of supplying and distributing goods for delivery within the State of New York to have consequences in the State of New York and derives substantial revenue from interstate commerce.

7. The Court has pendent jurisdiction of the New York state law claims.

8. Venue in this Court is proper pursuant to 28 U.S.C. §1391(a)(2) since a substantial part of the events giving rise to the claim occurred in the District.

9. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

## THE PARTIES

10. Ultrafabrics is, and at all times mention was, a corporation, organized and existing under the laws of the State of New York, with its principal place of business located at 303 South Broadway, Suite 201, Tarrytown, New York. Ultrafabrics is engaged in the business of marketing and selling polyurethane based products to various industries throughout the United States.

11. Deitsch now is, and at all times mentioned was, a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business located at 14 Farwell Street, West Haven, Connecticut. Deitsch is engaged in the business of manufacturing man-made leather material and non woven substrates.

## AS AND FOR A FIRST CAUSE OF ACTION

## [BREACH OF CONTRACT]

12. Ultrafabrics repeats and realleges the allegations set forth in paragraphs "1" through "11" above as though fully set forth herein.

13. On or about June of 2004, Ultrafabrics contacted Deitsch to inquire whether it could develop and manufacture trim material for seating application in the recreational vehicle ("RV") market which Ultrafabrics in turn could resell to one of its customers.

14. Between February and April of 2005, Deitsch worked on developing and did in fact develop trim material that would conform to minimum product specifications and standards established by the parties (hereinafter the "Trim Material").

15. On or about April 6, 2005, Ultrafabrics and Deitsch entered into an agreement whereby Deitsch agreed to manufacture and sell to Ultrafabrics the Trim Material it had developed for the agreed upon price of $6.10 per linear yard (the "Agreement"). Pursuant to the

terms of the Agreement, all goods sold by Deitsch were to be of the same quality and conform to the minimum product specifications and standards established by the parties and as an inducement for Ultrafabrics to enter into the Agreement Deitsch warranted to it that the goods would be of such quality.

16. Between April of 2005 and December of 2009, Ultrafabrics purchased large quantities of the Trim Material from Deitsch. Upon its receipt of each shipment, Ultrafabrics duly examined the goods to confirm their general conformity and relying on Deitsch's warranty accepted the whole of the goods and paid Deitsch the agreed upon price.

17. Thereafter, and without knowledge of their real condition, Ultrafabrics resold the Trim Material to its customer who used it for its intended purpose.

18. Commencing on or about September of 2007 Ultrafabrics began to receive complaints from its customer that the Trim Material it had purchased that year began to prematurely crack and delaminate and thus was defective. Ultrafabrics immediately notified Deitsch of the issue and requested that it determine the cause of the defect.

19. To date, Ultrafabrics continues to receive complaints from its customer that the trim material it purchased in the years 2007, 2008, and 2009 was defective for the aforementioned reasons.

20. As a result of the numerous complaints Ultrafabrics received from its customer, Ultrafabrics conducted further tests on samples taken from the trim material produced and shipped in 2007 and 2008 which revealed that they were of inferior quality and did not conform to the agreed upon minimum standards established by the parties.

21. By manufacturing and selling Trim Material of inferior quality which did not conform with the minimum standards established and agreed upon by the parties Deitsch

breached its Agreement with Ultrafabrics.

22. As a result of Deitsch's breach, Ultrafabrics suffered a monetary loss equal to the amount it paid for Trim Material which it presently holds in storage but is unfit for resale.

23. As a result of Deitsch's breach, and in order to fulfill its contractual obligations with its customer, Ultrafabrics was required to substitute the defective Trim Material it sold to said customer with a more expensive material thereby causing Ultrafabrics further monetary loss.

24. Deitsch's breach has caused irreparable harm to Ultrafabrics' reputation thereby resulting in lost sales and profits.

25. Deitsch's breach has caused other incidental and consequential damages.

26. Ultrafabrics has performed all of its obligations under the aforementioned Agreement.

27. As a result of Deitsch's breach, Ultrafabrics has been damaged in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest and the costs and disbursements of making this action.

## AS AND FOR A SECOND CAUSE OF ACTION

## [BREACH OF WARRANTY]

28. Ultrafabrics repeats and realleges the allegations set forth in paragraphs "1" through "27" above as though fully set forth herein.

29. Deitsch is a merchant with respect to goods of the kind it sold to Ultrafabrics, and there was in the sale an implied warranty that those goods were merchantable and fit for the use which it was intended to be used.

30. At the time of sale, Deitsch was notified and knew of the purpose for which the material was purchased, and then and there warranted to produce the same to be of merchantable

quality and fit for that purpose.

31. Deitsch breached the aforesaid warranty in that the Trim Material it manufactured prematurely cracked and delaminated thus proving to be unsuitable for the purposes which it was intended and utilized, and not of merchantable quality.

32. Deitsch's breach of warranty caused Ultrafabrics to suffer damages in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest and the costs and disbursements of making the action.

## AS AND FOR A THIRD CAUSE OF ACTION

## [NEGLIGENCE]

33. Ultrafabrics repeats and realleges the allegations set forth in paragraphs "1" through "32" above as though fully set forth herein.

34. Deitsch had a duty to apply the skill and care required of a company engaged in the business of manufacturing and supplying goods such as the Trim Material.

35. Deitsch had a duty to oversee and ensure that the Trim Material, including components used in manufacturing, was free from defects.

36. Deitsch carelessly, recklessly and negligently performed its work by supplying defective Trim Material to Ultrafabrics.

37. No negligence on behalf of Ultrafabrics contributed to the defective condition of the Trim Material.

38. The carelessness, recklessness and negligence of Deitsch supplying defective Trim Material caused Ultrafabrics to sustain damage including the loss of the value of the inventory which could not be sold and lost profits and other consequential economic damages.

39. The carelessness, recklessness and negligence of Deitsch supplying defective Trim Material caused irreparable damage to Ultrafabrics' business reputation.

40. As a result of Deitsch's carelessness, recklessness and negligence, Ultrafabrics will continue to suffer a loss for the foreseeable future by having to replace the defective Trim Material it previously sold to its customer who in turn has used it for its intended purpose.

41. As a result of Deitsch's carelessness, recklessness, and negligence, Ultrafabrics has been damaged in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest and the costs and disbursements of making this action.

## AS AND FOR A FOURTH CAUSE OF ACTION

## [FRAUD]

42. Ultrafabrics repeats and realleges the allegations set forth in paragraphs "1" through "41" above as though fully set forth herein.

43. Pursuant to the terms of the Agreement, all Trim Materials manufactured and sold by Deitsch was to be of the same quality and conform to the minimum product specifications and standards established by the parties.

44. Sometime in the year 2007 Deitsch changed the materials it used to manufacture the Trim Material in order to reduce its manufacturing costs and concealed this fact from Ultrafabrics.

45. As a result of the change in the materials used to produce the Trim Material, all products produced by Deitsch in the years 2007, 2008 and 2009 were of inferior quality.

46. Deitsch knew that by changing the materials it used to manufacture the Trim Material the product would prematurely crack and delaminate.

47. A reasonable inspection of the goods would not have revealed that Deitsch changed the materials it used to manufacture them.

48. Beginning in and around September of 2007, Ultrafabrics continuously requested Deitsch to explain why the Trim Material was prematurely cracking and delaminating and Deitsch continued to conceal the fact that it changed the materials it used in their production.

49. Between September of 2007 and December of 2009 Deitsch misrepresented to Ultrafabrics the cause of the premature cracking and delaminating of the trim material and Ultrafabrics relied on this misrepresentation in deciding to continue to purchase said material from Deitsch.

50. Ultrafabrics had no knowledge of Deitsch omission and misrepresentation at the time it purchased the Trim Material.

51. As a result of Deitsch's fraud, Ultrafabrics has been damaged in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest and the costs and disbursements of making this action.

**WHEREFORE**, Ultrafabrics demands that the Court order the following relief against Deitsch:

1) On the First Cause of Action damages in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest, incidental and consequential damages, and the costs and disbursements of making this action.;

2) On the Second Cause of Action damages in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest and the costs and disbursements of making this action.;

3) On the Third Cause of Action damages in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest and the costs and disbursements of making this action.

4) On the Fourth Cause of Action money damages in an amount to be determined at trial, but in any event not less than Seven Hundred Thousand Dollars ($700,000.00) plus pre-judgment interest and the costs and disbursements of making this action.; and

5) For such other relief as the Court may deem just and proper.

Dated: White Plains, New York
August 19, 2010

Yours, etc.

_____
Steven A. Campanaro, Esq. [SC 4612]
Attorney for Plaintiff
Ultrafabrics, LLC
244 Westchester Avenue, Suite 410
White Plains, New York 10604
(914) 686-0634